Welcome to the Eleventh Circuit. We want to thank Judge Wetherall who is visiting with us here from the Northern District of Florida and sat with us yesterday and will be here with us today. We very much appreciate his assistance and we are happy to have him share the bench with us. Our first case today is Ravan v. Corporal Althea Addison Jackson and we will hear first from Ms. Braunemann. Thank you, Your Honor. I may it please the Court. Nicole Braunemann on behalf of Mr. Ravan. When Mr. Ravan was booked into the Houston County Jail, medical staff altered the medications that he had been prescribed for his pre-existing brain tumor. The resulting toxic reaction covered most of his body in open bleeding sores that made his condition and his need for hospitalization and intensive treatment obvious even to a lay person. But for weeks, the jail gave him grossly inadequate medical care. The result is that he suffered terrible, unnecessary pain for weeks on end and that he is now permanently covered in scars, blinding one eye, and has lost a testicle. Mr. Ravan proceeded pro se in the District Court. Now as appointed pro bono counsel to handle this appeal, we would like to assist the Court by highlighting the record below to demonstrate that Mr. Ravan's claims have merit as pleaded and deserve to go forward. I would like to focus today on the Eighth Amendment claim against the medical defendants, which the District Court improperly dismissed and then improperly denied Mr. Ravan leave to replead. Many of the facts there also go to the deliberate indifference of the officer defendants who were improperly dismissed on summary judgment. The food service defendants were also improperly dismissed on their motion to dismiss. Again, I will be focusing on the claims against the medical defendants. Proceeding to those claims, his operative pleading adequately pleaded that the medical defendants deliberate indifference. At the stage at which his pleadings were dismissed, he needed only to allege a serious medical need and that they were deliberately indifferent. The serious medical need is supported by the record. Both his brain tumor, which was noted at his intake, and his SJS-10, Stephen Johnson's syndrome. I don't think there's any question there's a serious medical need. I'll tell you where I think there's a problem on that one. And that is, he does not appear to me to have pled the specificity as to each specific defendant. And as you know, our case law requires that. So if you wanted to address that, that might be helpful to me. I have several points on that. First, he was specific in certain allegations. And so certainly, for instance, R66 at 7, he does make specific allegations that Dr. Roble diagnosed him and that nurses Sprague and Vaughn concurred. So certainly the Court should pay attention to those specific allegations. Second, there's an inference here that is supported that when he alleges collectively against the medical defendants, he means each listed defendant. His complaint lists more medical staff than are actually listed defendants. So he was — he did not list every single medical personnel that he saw during his time at the jail. He listed only those against which he was alleging claims. So his complaint mentions other medical staff were not listed. That supports an inference that when he does have a collective allegation, that it is against each of the specific defendants. And third, the Court should also take note that he was twice denied access to his earlier pleadings, including an attachment to his complaint, which was the original copy, his only copy of a daily log that had all of his interactions. So — Was that daily log — I know it was attached to the operative pleading, but was it incorporated in any way to it? We believe that it is incorporated by reference to his operative complaint at R66 by the fact that he notes his grievances, which are included in his attachment. But is that reference to grievances — I mean, grievances are separate in the prison context than this log that he kept. And I guess I didn't see anywhere where he specifically referred to that log as something he was bringing into the complaint. We believe that it should be incorporated just with a little construction of his reference to grievances. But in any case, it should be in the Court's mind as it considers the fact that he did not have access to that log when he was drafting his verified complaint. Nonetheless, we think that as pleaded, it is sufficient to allege claims against the defendants. Can you address the denial of the right to amend his pleading? Yes, Your Honor. And so our 15A analysis goes to the fact that we believe the district court should have considered his motion for leave to amend under the 15A standard. So after the other — they dismissed the medical defendants without prejudice. And then after the other defendants, the R&R dismissing them was issued, he moved for leave to amend. The district court denied that motion as moot. So he did not apply 15A analysis at all. And the mootness inquiry is — it was not relevant at that point because his claims against the medical defendants were still alive. They had not been dismissed. And so — Did he file the motion to amend? I thought it was filed before the judgment but ruled on after the judgment. Am I mistaken? So the motion for leave to amend, which is at R175, was filed after the R&R. The district court, in one order, both adopted the R&R and dismissed the motion for leave to amend as moot. And I guess my question is why is — why would that be wrong or an abuse of discretion or anything because it seemed like what happened, it was kind of a piecemeal disposition of the claims against the defendants. And when the district court got to the last defendant that had claims against and disposed that, that was when judgment was entered, in effect, against everyone, including the medical defendants. And so at that point, is it proper to — or is it required to allow leave to amend? So certainly, if the judge was going to determine that the amendment would be futile, we just can't know. We have no analysis. He just denied it as moot. And so certainly, we think that amendment was proper, that the additional evidence that had come out in his claims against officer defendants, such as the affidavit of Nurse Vaughn, only go to — only support the inferences that can naturally be read from his operative pleading. So we think that under 15a, the district court should have allowed amendment, and that was his moment to do it. And so we would seek that the court would reverse the motion to dismiss with instructions for leave to amend. And that would also assist the district court, because with the assistance of counsel, we think that we could make the complaint more accessible to the district court. I want to ask you to speak for a moment about the claim with respect to the two officers who allegedly refused to allow him to file grievances. Yes, Your Honor. So the officer defendants have conceded that there's a fact issue as to whether they denied him medical request forms. And given that fact issue, we think that a clearly established law in the circuit would support reversal of the summary judgment order. And the cases that I would point the court to on that are Brown v. Hughes, which shows that even small delays by jail personnel in a medical emergency can support deliberate indifference. I would also point the court to Washington v. Dugar, which talks about excessive pain and denying access to medical care during times of excessive pain, and that can support deliberate indifference. And I would also point the court to Howell v. Burden, which says that when there are medical personnel who alert jail staff that medical treatment may be inadequate, then that gives the jail officers sort of an additional requirement to seek more medical help for the inmate. One of the issues, and I know you wanted to rely on your briefs primarily for the food service defendants. One of the issues the defendants raise here is that there's no allegation that the jail here receives Federal funding such that the Federal RELUPA statute is even triggered here. And you refer us to a webpage or some sort of budgetary document and suggest that we should take judicial notice of that fact. Is that something we can sift through and take judicial notice of here? So, Your Honor, first, as you note, that jurisdictional issue only goes to the RELUPA claims and not to the First Amendment claims. And second, I would say that we do believe that they receive Federal funding and that we can give the court additional sites if the court is keen to take judicial notice. But actually, this also just demonstrates the need for further jurisdictional discovery. This could be resolved in a single interrogatory. Do you receive Federal funding? Or if they would like to make a representation to the court today that they do not receive Federal funding, they can do so. But we think that this just shows that there's a need for simple jurisdictional discovery to let that claim go forward. But that request for jurisdictional discovery, the first time that has come up is maybe right now, isn't it? It is, Your Honor. But to be fair, they only raised it in their response on appeal, which it's an OK time to raise it. But it just shows that Mr. Rivand had no notice, no ability while he was in the district court to address that issue. And so jurisdictional discovery is especially appropriate in that case. Your Honor, going back to the deliberate indifference of the medical defendants, we would just point out that there are many allegations in his complaint regarding the care he received. He says he received only Tylenol and mouthwash for a condition that requires hospitalization with constant pain treatment for two to four weeks. And so even a layperson would call 911, go to the emergency room if they saw somebody with SJS-10, which is incredibly visible, even more so than in McElligot, this court's that found deliberate indifference for medical defendants in the case of undiagnosed colon cancer. In that case, I would note that like the inmate here, the inmate there received periodic medical visits and was seen by a doctor and a nurse, but the court still allowed the deliberate indifference claim to go forward because their treatment of him was so inadequate, so grossly inadequate. And that is supported even more so here, where unlike the undiagnosed colon cancer, his entire body had his skin falling off in sheets. And even while he was in the medical unit as he pleaded, his eye membrane became detached from his eye and had to be removed with a pair of tweezers. And so the condition was so obviously dire that the medical defendants and his pain was so excruciating and unnecessary that the deliberate indifference claim is supported here against the medical defendants. And that also goes, and for the medical defendants, I would point the court to the cases in McElligot and Ancada for that proposition. And I'll reserve the rest of my time. Thank you. All right, Mr. Atkinson. Thank you, Your Honor, and may it please the court. As the court knows, there are two issues concerning the medical defendants before the court. First, whether the district court erred in dismissing Mr. Rivon's complaint without prejudice. And two, whether this court should direct the district court to grant leave to amend. The answer to both questions is no. First, as the court has pointed out, Mr. Rivon failed to plausibly allege that each of the medical defendants was deliberately indifferent to his serious medical needs. I guess, counsel, the one, I tend to agree with you as to all of the defendants except the doctor. With respect to the doctor, at least in this daily log, there was a specific identification of what the doctor did or did not do, what he said he would look at and what he said he wouldn't look at, that at least potentially plausibly could state a claim for deliberate indifference. The question is whether that allegation in this daily log is somehow part of this complaint. But it seems like giving a prisoner's pleading a liberal construction, how is it not? Mr. Rivon certainly entitled to a liberal construction, but I don't know anywhere where it incorporated the log. And I'm also not aware of an allegation in the log that would amount to more than that. I'm looking on page seven that I showed Dr. Warble the left heel. I'm getting diabetic ulcer on and try to explain about the lump on my right testicle, how it's getting bigger. And he said, quote, I don't want to see or feel your balls again, then politely asked me to leave so he could see another patient. Again, I don't think it's incorporated, but if it is, I think that one would amount to the most inadequate care, negligence maybe, but not deliberate indifference. And I don't think there's any allegation that ties that to his allegations of his serious medical needs, how that's connected to it in the complaint. Because he alleges that there was, you know, he ties it to the Steven Johnson syndrome, but doesn't tie that to it, I don't think. And again, I think it is not incorporated. I think what's in the complaint is certainly a list of these named defendants and an allegation that he suffered from a medical condition, but not that anyone was able to provide him any care. At worst, it was negligence, I believe. But negligence implies some care. This, clearly, he received no care. So how is that not deliberately indifferent when he doesn't even bother to examine the prisoner? I think that would be, at worst, he did not examine him as requested at that time. I don't think there's an evidence or anything in the log that suggests he received no care at all that caused the injury. Except the log entry that was just read to you. He says he doesn't want to see his private parts at all anymore. That's what he said, right? And so we have to take that as true for purposes, for our purposes. Then how does that show that he gave him any treatment at all after that? I mean, isn't that a problem for your client? I think that is, at most, one incidence of he didn't want to provide the requested specific care. I don't think that he provided no care at all at any point. I mean, the plaintiff lost a testicle here, and he's complaining that the doctor told him he's not going to look at his testicles anymore. So how is that not providing him any care? Again, I don't think there is a, it's not incorporated, and if it were, it's not pleaded in a way that ties that to the allegations. Why shouldn't he be allowed to amend, now that he has counsel? For three reasons, Your Honor. I mean, you don't disagree, or you do concede that he had a serious medical need, correct? I do, Your Honor. All right. So this is not frivolous, correct? He has serious medical needs, but at this point, there's a judgment, so he did not move for leave to amend until after the entry of judgment, and he moved for leave to amend to add parties who had been dismissed, and his claim would, sadly, have expired by that point, and he can't add defendants under 15C. The third point is, even if procedurally, did he move to amend before judgment or after judgment? It's my understanding that it was after the entry of judgment. Wasn't it after the R&R, but before the district court entered judgment? Yes. And that's not, if it was after the R&R, but before the district court entered judgment, that's before judgment. That is not something that's been raised. That's been filed as after the judgment. You can look at the docket, counsel. It's a yes or no. It's a yes or no. I think it would, he dated it, I believe, before judgment. I don't know that it was considered filed before the judgment. Okay, well, I mean, obviously, there's a mailbox rule for prisoners, so obviously, we'll look at the docket ourselves since you're unhelpful. Actually, I'm happy to look more into it. I don't know the answer. My other issue that I want to raise briefly is, even if leave to amend is possible, I think it's something the district court should address first and not have the district court directly to amend. At most, the district court should consider leave to amend. Thank you, Your Honor. Thank you, counsel. All right, we'll hear from Mr. Daley now. Thank you, Your Honor, and may it please the court. We'll kind of switch things up here. I represent the food service defendants, and the appellant hasn't presented any argument on that issue or the issues related to my client so far, so I don't have anything to directly rebut. If the court has any specific questions, I'd be happy to address them. Yes, so I think that the question or the issue that came up is whether the prison receives federal funding, right? Correct. To see whether our LUPA applies. Correct. So let me just ask you, does the prison receive federal funding? I honestly do not know the answer to that question, Your Honor. I'm solely appellate counsel and so was not involved in the case in the district court. But I mean, isn't that important? I mean, are you arguing that they don't receive federal funding? Well, I'm arguing that it wasn't alleged and that's what we're concerned about here for purposes of our motion to dismiss. The case law says . . . So to be clear, you argued in your brief that there is a jurisdictional problem with the LUPA claim, but you're not able to tell us today whether you do or you don't actually have a jurisdictional problem. That is true from an evidentiary standpoint, Your Honor. So you made an argument to this court without verifying its veracity? Well, no, Your Honor. My argument is that it wasn't alleged. I've not said that there was no federal funding. I've said it wasn't alleged. But the fact that it wasn't alleged only becomes important if there's no federal funding. Not necessarily so, Your Honor. I wouldn't agree with that because there's some cases that we cited in a footnote in our brief that say even if you don't consider this to be a jurisdictional argument, the failure to allege it would also be grounds for failure to state a claim upon which relief could be granted. So either way, the complaint, recast complaint, is deficient. Putting that issue aside for a second, how many meals does one have to be denied until their religion is substantially burdened? I don't know that I can answer that question definitively or that you all can. We can simply make references to the cases and to the standard, of course, which requires some kind of, in terms of for a policy for the summit to be liable, it's got to be a longstanding issue. Here we have five meals over 206 days, 559 total meals. I just don't think that that low number, that's less than 1% of the meals he had, can constitute a substantial burden or either be longstanding enough to be a policy. Thank you, counsel. Thank you, Your Honor. All right, we'll hear from Mr. Sewell. Your Honors, may it please the Court, I'm Clay Sewell. I represent Freeman and Jackson, who are deputy jailers at the Houston County Detention Center. They are alleged by Mr. Ravon to have carried out the Eighth Amendment deliberate indifference to serious medical need claim. Your Honor, the detention center contracts with a medical company that provides medical, licensed medical staff to the jail to take care of the day-to-day medical needs of the inmates, and there's a licensed medical provider there every day. When Mr. Ravon got to the detention center, he was seen by a physician, and that physician diagnosed him with a number of conditions and put him on 12 different medications, and at that visit, he also ordered twice daily blood sugar checks to be taken for the duration of the incarceration. And so every day, Mr. Ravon had a face-to-face interaction, twice a day unless he refused, with a member of the medical staff, and he was able to address any other medical needs he may have during those face-to-face interactions. Counsel, I'm sorry to interrupt, but let me tell you where my concern is with your clients, and that is with the allegation that they refused to provide him, or they refused to provide him with grievances or deliver the grievances, because the grievances would have related to what he was alleging were substandard care, which having visits with medical doesn't necessarily address that issue. Right. So two things about the alleged grievance form, which is pretty much, which is pretty heavily disputed. In those, in his pleadings, he was- Right, but if it's heavily disputed, don't we have a problem on summary judgment? It's disputed that the grievance, he was filing, there's two forms. There was medical forms that he completed that were actually picked up by the medical staff, and so that's a completely separate issue. And then there were grievance forms to address conditions of confinement within the jail. So his grievance forms didn't have anything to do with his medical, his medical forms. We showed, those go directly to the medical folks. And when we're talking about- But doesn't he say his grievances have to do with the medical treatment he's receiving or not receiving? Right. So, I mean, there, you would agree with me that there could be, besides medical forms to deal with his medical issues, he could be making separate grievances to grieve what he thinks is substandard medical care. Are you saying that he couldn't do that? He could. Here's how I view the pleadings he made. He was filing grievances or medical requests for different specialists and different medications. And so what our circuit and other circuits have held is that the division of labor between the jailers and the medical staff is an important one because our jailers aren't medical and our medical people are. And so when we have questions about treatment and prescriptions and referrals and things that have to do with a clinical determination, those are, those are issues that are better left resolved by a member of the medical staff. So if there's an allegation that lack of a grievance created a delay, then, and with the jailers knowing that he's getting at least treatment twice a day, and I point out there were 81 other visits with medical staff members during a 137-day incarceration. So we're talking about- He also had a condition that is fatal at least 10% of the time and sometimes more, right? I mean, so it kind of is understandable that he lost vision in an eye. He lost a testicle. He has other permanent problems. It's kind of understandable why he would have received medical care or should have received medical care on that many days while he was there, right? He did. And here's, and here's how I view what he has pled and admitted is that he had a very rare, very serious disease that was caused by an adverse medication reaction and that disease was identified and treated. And for the last month and a half he was back in a general population- Well, the way it was treated at some point was by a provision of Tylenol, which clearly is not sufficient to treat the condition of toxic epidermal necrolysis. I mean, wouldn't you agree with that? I, the, the jailers, unless they, unless they perceive that there is a gross misjudgment in the care being provided by the medical staff are, are, are justified in relying on those medical staff decisions because as the Third Circuit described, we would have a perverse situation if our non-medical people were questioning our medical people. Let's get back to the issue here, which is the filing of the grievances. I mean, you're saying that they didn't, that the officers you're representing, Freeman and Jackson, didn't have to file these grievances. Is that what your position is? No, not at all. What my position is, is that what he was asking for in those grievances was different treatment. And, and because he's getting treatment every day- So, is it, but, okay, but you're basically saying, we, you're saying that it doesn't matter whether or not those grievances were filed because you have to take that position. If you don't take that position, then we're left with, then we're left with a difference between I filed grief, I wanted to file grievances, they wouldn't let me, right? And we've got serious medical issues. And- He was, if, as I understand what he was doing, he was grieving the treatment he was getting. Let's get back to the issue. Did your clients, what is your client's position with respect to whether they filed the grievances that he provided? Our client's position is that the, the grievances that pertain to medical treatment are taken to the medical staff for- Grievances that are, counsel, the grievances that pertain to a failure to provide medical treatment, because there's clearly a difference, and I think you understand that there is a difference, between requests for medical care, and he has the ability to say, I am not receiving medical care, and he's filing a grievance with the jail. Right, and what, and the, and the jailers are on notice that, or the jailers are aware that he is getting daily visits with the medical staff, and unless they have a reason to believe But that doesn't really answer the question. It's not up to them to filter the grievances. They, they're, they, you know, the question here is, if they were provided with grievances, which we have to accept because that's what is alleged, or they, that he tried to file grievances, then the question is, did they deliver the grievances, or did they interfere with his ability to deliver the grievances? And what I'm having a hard time understanding is what your position, what your client's position is on that. Instead, it seems like you don't want to answer the question, so we're going to have to draw our own conclusions from that, but I want to, before we do that, I want to give you the opportunity to tell me what your client's position is. Is their position that they filed the grievances, or they didn't file the grievances because they thought it was already being taken care of through medical? What is your client, or is it something else? Our client's position factually is that they, they never denied him a grievance. Our position legally is that a grievance would, denial of a grievance would create at a minimum a delay in, in care, and if, when we're talking about a person who's, who's getting treatment two and a half times a day, then there, then there can't really be a delay unless the jailers are on notice that something obviously dire is going on. Right, but you... If they're on notice that something obviously dire is going on, I mean, his skin is falling off. It's okay. I think we have your position. I appreciate your time, and we will hear again from Ms. Braunemann. Thank you, counsel. Thank you, Your Honor. I would like to address first with respect to the medical defendants. In addition to the daily log, I want to highlight several pleadings in the operative complaint. His operative complaint, he describes, quote, suffering hour by hour with, quote, no medical treatment. That's R66 at 8, paragraph 9N. His complaint also discusses, quote, no medication to relieve symptoms except for, quote, mouthwash or Tylenol. That's R66 at 7. And also, if you take a look at the affidavit of nurse Vaughn, which we don't think the court needs to, but that just bears out his pleadings. In addition, I would note that he did move for leave to amend before the final judgment or I think it's 183, but the court can take a look at the docket for that as well. Counsel, if you'd talk to us a little bit about the First Amendment, the RLUIPA claims, because it seems to me that, you know, counsel's argument that this was only five meals over the course of 500 something does carry some weight in us evaluating whether there was a substantial burden here. What is your position as to either how many meals or do we count meals? How do we make that determination? So, Your Honor, this was on a motion to dismiss and his pleading says he was denied meals, quote, over and over to the extent that they want to submit some summary judgment evidence counting up the number of times in his log. We don't think that's appropriate, especially because he nowhere makes the representation that his log is an exhaustive list of times that he was denied his proper meal. I would also note that Hold on a second. Maybe I don't understand that. So the allegation is he denied it over and over, but the log you don't dispute shows only five instances where that happened. He notes five instances specifically in that log, but that's not an exhaustive representation of when he was denied his meal. And even if it was only five times, he's diabetic and he needs to eat every single meal. And it's a dietary requirement of his religion that he eat a kosher meal, which is a substantial burden on his free exercise. And in addition, I would note that there's also something more here in the religious harassment that he received, them shaking up his meals, them, multiple people at the jail questioning his Jewish faith, which suggests that there was harassment in addition to denial. And so it's very different from the case the district court cited, where the jail seemed to make every effort to provide the meals, the vegan meals in that case. And Your Honor, as to the officer defendants, I would just note that, you know, every time that they denied a grievance, certainly they cannot rely on medical judgment in those instances because there is no medical judgment when they're denying the medical request forms to take him to receive medical care. And there is case law in this court in Howell v. Burden that talks about when medical staff alerts jail officers that something more is required, which he, his verified complaint says that medical staff did alert them that something more was required. Thank you, counsel. That is the higher standard. Thank you very much. We appreciate your argument. And we note that you were appointed. We appreciate your taking the case and helping out the court by doing that. Thank you to all of the attorneys for today's argument. Thank you. All right, our next case for today is O'Kelley v. Sgt. Travis.